KATHARINE E. BRADFORD *vs.* RICHARD J. MONKS
& another.

Suffolk. Nov. 17, 1881. — March 4, 1882. LORD, FIELD & C. ALLEN, JJ.,
absent.

A testator by his will devised all his estate, real and personal, to two persons, one of whom was his son, in trust to convert the personal estate into money and to manage the real estate, repairing, leasing, and, if necessary, rebuilding, and receiving the income thereof; directed them to apply the net income of the real estate and the proceeds of the personal estate to the payment of certain annuities, and to divide the remainder of the income of his estate between his wife and children; and further directed, on the decease of all the children, "my trustee or trustees for the time being" to convey the estate to his grandchildren; and also provided as follows : "And I authorize my trustees, if they think best, to sell and convey such of my lands as are in B., or any part of such land, and to reinvest the proceeds of such estate or lands with the proceeds of the sales of my personal estate." The lands in B. were unimproved. *Held,* that the power to sell the lands in B. was not restricted to the trustees named in the will, but might be exercised by their successors in the trusts.

BILL IN EQUITY, filed September 12, 1881, against Richard J. Monks and Frank H. Monks, to restrain them from selling

certain real estate in South Boston, as trustees under the will of John P. Monks.

The bill alleged that John P. Monks died on December 11, 1859, leaving a will, by which he appointed his son Richard J. Monks and Osborn Howes executors and trustees of his will, and to whom he devised all his estate real and personal, of every sort and kind, "in trust that said trustees shall, as soon as convenient, convert my personal estate into money, and to manage and take care of, according to their best ability and skill, my real estate, repairing, leasing, letting, and, if necessary, rebuilding, and receiving the income thereof, and to apply said income, together with the proceeds of my personal estate, in the first place, to payment of expenses in management and repairs thereof;" secondly, to pay annuities to the testator's mother and sister for their respective lives; and the remainder of the net income to divide in certain proportions between the testator's widow and his children during their lives, until the decease of all his children; and " I then order and direct my trustee or trustees for the time being shall make over and convey all my estate equally to my grandchildren. And I authorize my trustees, if they think best, to sell and convey such of my lands as are at South Boston, or any part of such land at South Boston, and to invest the proceeds of the sales of such estate or lands with the proceeds of the sales of my personal estate in United States or state securities or city of Boston scrip, or in first-class mortgages of real estate."

The bill further alleged, that the plaintiff was a daughter of the testator and one of the beneficiaries under the will; that the trustees named in the will duly proved the will, and undertook the offices of executors and trustees; that on March 7, 1881, Osborn Howes resigned the trust and was relieved of the same by the Probate Court, and Frank H. Monks was appointed in his stead, and was now co-trustee with Richard J. Monks; that the defendants, as trustees, were intending to sell a part of the real estate of the testator situated in South Boston, and had entered into negotiations for the sale of one parcel thereof, whereas they had no power under the will to sell the same.

The prayer of the bill was, that it be declared that the right to sell the land in South Boston was given by the will only to

the trustees named therein, and not to their successors in office; that the defendants be restrained by injunction from selling any part of said land; and for further relief.

The answer admitted the facts alleged in the bill; averred that there were large quantities of land in South Boston held by them under said trust, yet lying unimproved, which the defendants, as trustees, had no sufficient means of improving; and that, in good faith, and exercising to the best of their ability the discretion reposed in them by the testator, and for the best interests of all concerned, they intended to sell the same.

The case was heard by *W. Allen*, J., on the bill and answer, and reserved for the consideration of the full court.

*M. Gray*, for the plaintiff.

*F. C. Lowell & A. L. Lowell*, for the defendants.

W. ALLEN, J. When the new trustee was appointed, he had, by force of the statute, the same powers, rights and duties as if he had been originally appointed, and the estate vested in him as it had vested in the trustee in whose place he was substituted. Gen. Sts. *c.* 100, § 9. If the power of sale attached to the trust, and was not personal to the former trustee, it would pass to the new trustee as part of the trust.

It seems clear that the testator intended that the power should be exercised by his trustees as such. The entire legal estate is given to the trustees to hold and manage; they are to convert the personal estate into money, and to " manage and take care of, according to their best ability and skill, my real estate, repairing, leasing, letting, and, if necessary, rebuilding, and receiving the income thereof; " they are to apply the income of the · real estate and the proceeds of the personal, according to the directions of the will, until the decease of all the testator's children, and then to make over the estate to his grandchildren. Immediately after these directions follows the provision in question: " And I authorize my trustees, if they think best, to sell and convey such of my lands as are at South Boston, or any part of such land at South Boston, and to invest the proceeds of the sales of such estate or lands with the proceeds of the sales of my personal estate in United States or state securities or city of Boston scrip, or in first-class mortgages of real estate." The lands at South Boston were unimproved, and the testator evidently

intended to authorize a sale of them, at any time during the continuance of the trust, when it should seem to the trustees to be for the advantage of the estate that they should be sold. The discretion given to the trustees is a part of the trust, and the power of sale is to enable them to execute that trust. It is a power coupled with a trust. The terms in which the power is given, the general provisions of the will, and the character and condition of the estate, are sufficient to show this; and the fact that the testator gave directions to the trustees authorized to make the sale as to the investment of his personal property, indicates that he understood that the sale would be made by the trustees who had charge of the personal property. *Gould* v. *Mather*, 104 Mass. 283. *Nugent* v. *Cloon*, 117 Mass. 219.

*Bill dismissed.*