NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-880

NICOLA A. DICIENZO & another[1]

vs.

ANGELA A. PIZZIFERRI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Angela Pizziferri, appeals from a declaratory judgment of the Land Court stating that the deed from Antonietta DiCienzo, trustee of the DiCienzo Realty Trust (Trust), to Angela Pizziferri dated November 1, 2016, and recorded on July 23, 2018, in the Norfolk County registry of deeds, is void and that the Trust holds legal title to the subject property. On appeal, Pizziferri claims that the judge erred in granting summary judgment to the plaintiffs, Nicola DiCienzo and John Merenda.[2] We affirm.

---

[1] John Merenda.

[2] Pizziferri also claims that the Land Court lacked jurisdiction in this matter because trusts are subject to the jurisdiction of the Probate and Family Court under G. L. c. 203E, § 204. We disagree. Pursuant to G. L. c. 185, § 1 (a), the Land Court has exclusive original jurisdiction of "[c]omplaints . . . for the confirmation without registration of title to land." Here, the

Discussion.  We review the allowance of a motion for summary judgment de novo.  Metcalf v. BSC Group, Inc., 492 Mass. 676, 680 (2023).  "Viewing the evidence in the light most favorable to the party against whom summary judgment entered, . . . [s]ummary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law" (quotation and citation omitted).  Id. at 681.

Here, there are no material facts in dispute.  On October 27, 1992, a certain property in Quincy was conveyed by recorded deed to Antonietta and Felix DiCienzo,[3] as trustees of the Trust. On the same date, Antonietta and Felix, as trustees, executed and recorded a declaration of trust, which provided that if all original trustees (Felix and Antonietta) "shall fail to serve because of death, resignation or incapacity, there shall serve as Successor TRUSTEES, in the order named:  NICOLA A. DiCIENZO,

_____

declaratory judgment did not affect the validity or terms of the Trust itself.  Rather, the title of the land was affected, as the declaratory judgment stated that the recorded deed to Pizziferri is void and that the Trust holds legal title to the property by operation of G. L. c. 203E, § 704 (a) (6).  This places this case squarely within the Land Court's exclusive original jurisdiction.  Contrast O'Donnell v. O'Donnell, 74 Mass. App. Ct. 409, 411 (2009) (no exclusive Land Court jurisdiction where judgment sought would not of its own force purport to modify title of land).

[3] Because Antonietta, Felix, and Nicola DiCienzo all share the same surname, they will be referred to by their respective first names for clarity.

2

JOHN MERENDA." The declaration also named Nicola and Merenda as beneficiaries of the Trust, pursuant to a schedule of beneficial interests dated and executed on the same date. In 2002, Felix died, leaving Antonietta as sole trustee.

On August 28, 2013, Pizziferri and Anne Marie Lara, both of whom were maternal great nieces of Antonietta, filed a petition in the Probate and Family Court seeking to be appointed as coguardians for Antonietta, because she "is unable to make decisions for herself due to her mental incapacity." The petition was accompanied by a medical certificate, which Antonietta's primary care physician completed and signed. The certificate stated, among other things, that Antonietta had progressive Alzheimer's dementia and could not manage financial, legal, or medical decision making.

On November 20, 2013, the Probate and Family Court judge found that the requirements of G. L. c. 190B, § 5-306 (b) (1)-(8) were met; found that a basis existed for the guardianship; and issued a decree appointing Lara and Pizziferri as coguardians of Antonietta.[4] Between 2015 and 2018, Lara and Pizziferri submitted to the Probate and Family Court annual

---

[4] The record reflects that Antonietta was also the subject of a conservatorship between 2012 and 2016, but the record lacks a formal decree and order from the Probate and Family Court to that effect. However, we need not address the impact of the purported conservatorship on our decision, for the reasons discussed infra.

3

reports, all of which generally described how Antonietta was not able to participate in decision making about personal and health care matters and required the guardianship due to her progressive Alzheimer's dementia.

On November 1, 2016, Antonietta executed a quitclaim deed, which purported to convey the Quincy property on behalf of the Trust to Pizziferri for the consideration of one dollar. On July 14, 2018, Antonietta died; at that time, the guardianship was still in effect. Just days later, Pizziferri recorded the 2016 deed from Antonietta in the Norfolk County registry of deeds.

Viewing these undisputed material facts in the light most favorable to Pizziferri, the plaintiffs were entitled to summary judgment as a matter of law. Pursuant to G. L. c. 203E, § 704 (a) (6), "[a] vacancy in a trusteeship shall occur if . . . a guardian or conservator is appointed for an individual serving as trustee." Accordingly, once Lara and Pizziferri were appointed as coguardians of Antonietta, her trusteeship terminated by operation of law. The terms of the Trust, itself, also provided that in the event of Antonietta's incapacity, which the Probate and Family Court judge found as fact in

4

placing her under a guardianship, Nicola and Merenda shall serve as successor trustees in the order named.[5]

As she was no longer trustee of the Trust, Antonietta lacked the legal authority to convey the property to Pizziferri on behalf of the Trust. Therefore, the deed is void as a matter of law, and title to the property remains in the Trust. It is irrelevant whether Antonietta actually regained mental capacity during any point during the guardianship, as the mere appointment of coguardians for Antonietta on November 20, 2013, operated to effectively terminate her trusteeship and all legal authority that follows from it.[6] It is similarly irrelevant whether the conveyance was made in good faith. See Bongaards v.

---

[5] While the record does not reflect that Nicola and Merenda had accepted the successor trusteeship in accordance with the terms of the Trust or that a successor trustee was appointed by the Probate and Family Court, it is a fundamental rule of law that "a trust shall not be allowed to fail for want of a trustee." Sells v. Delgado, 186 Mass. 25, 28 (1904). For this reason, as well as the irrelevance to the issues before the Land Court on summary judgment of both the plaintiffs' failure to assume their roles as successor trustees and their alleged actions of abuse or neglect of Antonietta, we reject Pizziferri's claim that the Land Court abused its discretion by denying an evidentiary hearing.

[6] For this reason, as well as the fact that Pizziferri attested to Antonietta's incapacity annually in the Probate and Family Court and is thus barred by judicial estoppel from asserting the contrary, see Otis v. Arbella Mut. Ins. Co. 443 Mass. 634, 639-640 (2005), Pizziferri's claim that the judge erred by relying on certain reports to determine Antonietta's mental capacity fails.

5

Millen, 440 Mass. 10, 15 (2003) ("Where, as here, the grantor has nothing to convey, . . . [t]he purported conveyance is a nullity, notwithstanding the parties' intent").  Summary judgment was properly granted to the plaintiffs.[7]

Judgment affirmed.

By the Court (Meade, Blake & Desmond, JJ.[8]),

Assistant Clerk

Entered:  February 15, 2024.

---

[7] Pizziferri had also filed two motions for reconsideration, although she did not properly appeal the judge's denial of those motions.  Regardless, we would affirm the judge's denial of the motions for the same reasons expressed herein given that the motions did not provide any new evidence or legal arguments that would affect the outcome of this case.

[8] The panelists are listed in order of seniority.

6